# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **SCOTT Q. LEWALLEN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 14-CV-756-GKF-FHM** |
| | ) | |
| **JIMMY MARTIN, Warden,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

Before the Court is Petitioner Scott Lewallen's 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. 2). Petitioner, a state inmate appearing pro se,[2] challenges his convictions entered in Tulsa County District Court Case No. CF-2010-1971 for first degree manslaughter and driving with a revoked license. Respondent filed a response to the petition (Dkt. 11), and provided the state court record necessary for resolution of Petitioner's claims (Dkts. 11, 12). Petitioner filed a reply (Dkt. 15). For the reasons discussed below, the Court finds and concludes the petition should be denied.

## *BACKGROUND*

In 2010, the State of Oklahoma charged Petitioner, in Tulsa County District Court Case No. CF-2010-1971, with first degree manslaughter, in violation of OKLA. STAT. tit. 21, § 711, after two

---

[1]   Petitioner is currently incarcerated at North Fork Correctional Center (NFCC) in Sayre, Oklahoma. Dkt. 21. Jimmy Martin, the warden of NFCC, is therefore substituted in place of Tracy McCollum as party respondent. *See* Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*. The Clerk of Court shall note the substitution on the record.

[2]   Petitioner was represented by counsel when he filed his petition, supporting brief, and reply. *See* Dkts. 2, 3, 15. On November 2, 2016, the Court granted counsel's motion to withdraw. Dkts. 22, 23. Accordingly, Petitioner now appears pro se.

former felony convictions (Count 1), and driving with a revoked license, in violation of OKLA. STAT. tit. 47, § 6-303(B) (Count 2).[3] *See* Dkt. 11-10, Second Am. Information, at 1-2.[4] Petitioner's trial began on November 7, 2011. Dkt. 12-3, Tr. Mot. Hr'g (Nov. 7, 2011). During jury selection on the second day of trial, Petitioner, represented by attorneys Becki Murphy and Clint Patterson, entered blind guilty pleas to both charges.[5] Dkt. 12-4, Tr. Plea Hr'g (Nov. 8, 2011), at 1, 3, 10-11. After a thorough plea colloquy, the trial court accepted the pleas as knowing, voluntary, and supported by a factual basis, found Petitioner guilty as charged, and set the matter for sentencing. *Id.* at 4-13.

Two days before his sentencing hearing, Petitioner moved to withdraw his pleas. Dkt. 11-1, Mot. to Withdraw Plea (Jan. 4, 2012), at 1. He alleged he pleaded guilty based on his attorneys' "inaccurate" advice that he would be eligible for judicial review and a possible sentence modification one year after he was sentenced.[6] *Id.* He further alleged that, after entering his pleas, he learned that

---

[3]     The State initially charged Petitioner with manslaughter in Count 1 based on an underlying misdemeanor offense of driving under the influence of intoxicants. *See* Dkt. 3 at 9. In the Second Amended Information, the State added an alternative Count 1, charging Petitioner with manslaughter based on the underlying misdemeanor offense of driving with a revoked license. Dkt. 11-10 at 1-2.

[4]     For consistency, the Court's record citations refer to this Court's stamped page number in the upper, right-hand corner of each document.

[5]     A "blind" plea "is a plea in which there is no binding agreement on sentencing, and punishment is left to the judge's discretion." *Medlock v. State*, 887 P.2d 1333, 1337 n.2 (Okla. Crim. App. 1994).

[6]     When Petitioner entered his pleas, OKLA. STAT. tit. 22, § 982a(A) permitted a district court to review a criminal sentence "[a]ny time within twelve (12) months" after imposition and to "modify such sentence . . . by directing that another sentence be imposed, if the court is satisfied that the best interests of the public will not be jeopardized." However, the review and modification procedure did "not apply to convicted felons who have been in confinement in any state prison system for any previous felony conviction during the ten-year period preceding the date that the sentence [at issue] was imposed." OKLA. STAT. tit. 22, § 982a(A) (2010).

2

his criminal history made him ineligible for judicial review. *Id.* The trial court held a hearing on the motion on January 6, 2012. Dkt. 12-5, Tr. Mot. Hr'g (Jan. 6, 2012). The court appointed attorney April Seibert to represent Petitioner at the hearing and, at the conclusion of the hearing, the trial court denied the motion. *Id.* at 10-11, 69-73. Immediately after the hearing, Petitioner asked the trial judge to recuse from the case. *Id.* at 73-79. The court held a brief hearing on that request and denied the same. *Id.*

On February 10, 2012, Petitioner filed a pro se written motion renewing his recusal request. *See* Dkt. 11-9, Mot. to Disqualify, at 1-2.[7] The trial court held a hearing on the motion on February 21, 2012. Dkt. 12-6, Mot. Hr'g (Feb. 21, 2012). Attorney Patrick Adams represented Petitioner at the hearing and adopted the motion as his own. *Id.* at 2. The court denied the motion. *Id.* at 2-4. Petitioner sought rehearing of his recusal motion with the presiding judge of the administrative district, who also denied the motion following a hearing. Dkt. 12-7, Tr. Mot. Hr'g (Mar. 14, 2012), at 3, 55-57. Petitioner sought review of the presiding judge's ruling by filing a writ of mandamus with the Oklahoma Court of Criminal Appeals (OCCA). *See* Dkt. 11-4, Pet'r App. Evid. Hr'g, Att. 4 (Adams Affidavit), at 82. The OCCA dismissed the writ as untimely on May 30, 2012. *Id.*

Petitioner, represented by Adams, appeared for sentencing on June 4, 2012. Dkt. 12-9, Tr. Sent. Hr'g (June 4, 2012). On the morning of the sentencing hearing, Adams filed a written motion to withdraw from the case. *See id.* at 3. At the hearing, Adams advised the trial court that he sought to withdraw based on "disagreements and a complete breakdown in any ability to communicate with [Petitioner] as his attorney." *Id.* The court denied the motion and proceeded with sentencing. *Id.*

---

[7]     In the same motion, Petitioner also renewed his request to withdraw his pleas. Dkt. 11-9 at 2-4.

After hearing statements from several of the victim's family members, argument from the prosecutor and Adams, and a statement from Petitioner, *id.* at 6-44, the court imposed a life sentence for the manslaughter conviction and a concurrent one-year jail sentence for the conviction of driving with a revoked license, *id.* at 46-50.

On June 11, 2012, Petitioner filed a pro se motion alleging (1) he received ineffective assistance of plea counsel and (2) the trial judge was biased and should have disqualified himself. Dkt. 11-2, Post-Sent. Mot. to Withdraw Plea (June 11, 2012). On the same day, Adams filed a separate motion on Petitioner's behalf, alleging Petitioner's plea was not "knowingly" entered based on the erroneous advice from plea counsel regarding his eligibility for judicial review. *Id.* at 8. The trial court denied both motions on June 13, 2012. *See* Dkt. 11-5, Resp. Cert. App. Brief, at 33.

Petitioner filed a certiorari appeal with the OCCA, raising eight propositions of error, and sought an evidentiary hearing on his ineffective assistance of counsel claims. *See* Dkt. 11-3, Pet'r Cert. App. Brief; Dkt. 11-4, Pet'r App. Evid. Hr'g. On September 24, 2013, the OCCA issued an unpublished summary opinion denying Petitioner's request for an evidentiary hearing and affirming Petitioner's convictions and sentences. Dkt. 11-7, *Lewallen v. State*, No. C-2012-518 (Okla. Crim. App. 2013) (unpublished) (hereafter, "OCCA Op."). Petitioner did not seek post-conviction relief.

### DISCUSSION

Petitioner filed the instant habeas petition on December 22, 2014. Dkt. 2. He seeks habeas relief on the following grounds: (1) his pleas were not knowingly, intelligently, or voluntarily entered; (2) he was denied his right to have a fair and impartial judge preside over his withdrawal of plea and sentencing hearings; (3) he received ineffective assistance from (A) plea counsel, (B)

recusal counsel, (C) sentencing counsel, and (D) all counsel;[8] (4) his convictions for manslaughter and the underlying misdemeanor offense of driving with a revoked license violate the Double Jeopardy Clause's prohibition against multiple punishments; (5) he was deprived of his right to conflict-free sentencing counsel; and (6) the cumulative effect of errors deprived him of a fair trial. Dkt. 2.

Because Petitioner is a state prisoner, the Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of his habeas claims. *See* 28 U.S.C. § 2254. Under the AEDPA, a federal court may grant habeas relief to a state prisoner "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2254(a). In addition, before a federal court may grant habeas relief, a state prisoner must exhaust available state-court remedies, *id.* § 2254(b)(1)(A), by "fairly present[ing] the substance of his federal habeas claim[s] to state courts," *Hawkins v. Mullins*, 291 F.3d 658, 668 (10th Cir. 2002). And, in most cases, the prisoner must file a federal habeas petition within one year of the date on which his convictions became final. *See* 28 U.S.C. § 2244(d)(1).

Respondent concedes, and the Court finds, that Petitioner exhausted his habeas claims by presenting them to the OCCA in his certiorari appeal, and that Petitioner timely filed his habeas petition. *See* Dkt. 11 at 2.[9] Respondent contends, however, that § 2254(d) bars Petitioner from obtaining habeas relief on the four claims the OCCA adjudicated on the merits—Grounds 1, 2, 3(A),

---

[8]     In Ground 3(D), Petitioner claims "all counsel in the state district court" provided ineffective assistance by failing to litigate his competency. Dkt. 3 at 40-42.

[9]     Respondent concedes Petitioner exhausted all six claims, but Respondent contends Petitioner presents an unexhausted argument in support of his Ground 1 claim. Dkt. 11 at 2. The Court will address Respondent's contention on this point in its analysis of the Ground 1 claim.

and 6. *See* Dkt. 11 at 2-36, 49-50. Respondent further contends Petitioner's remaining claims—Grounds 3(B), 3(C), 3(D), 4 and 5—are procedurally barred. *See id.* at 36-49.

## I. Claims adjudicated on the merits

Petitioner seeks habeas relief on four claims the OCCA adjudicated on the merits. The AEDPA limits the ability of a federal court to grant habeas relief for constitutional claims that were "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). With respect to such claims, a federal court may not grant habeas relief unless the prisoner demonstrates that the state court's adjudication of those claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by Supreme Court of the United States," *id.* § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, *id.* § 2254(d)(2).

Under § 2254(d)(1), "[a] state-court decision is contrary to clearly established federal law . . . if it 'applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from that precedent.'" *Smith v. Duckworth*, 824 F.3d 1233, 1241 (10th Cir. 2016) (quoting *Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 739 (10th Cir. 2016)). For purposes of habeas review, "clearly established federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A state-court decision involves an unreasonable application of clearly established federal law "if the decision 'correctly identifies the governing legal rule but applies it unreasonably to the facts

of a particular prisoner's case.'" *Fairchild v. Trammell*, 784 F.3d 702, 711 (10th Cir. 2015) (quoting *Williams*, 529 U.S. at 407-08 ).  An unreasonable application by the state court is "not merely wrong; even 'clear error' will not suffice."  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).  Rather, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Wood v. Allen*, 558 U.S. 290, 301 (2010).  And, on habeas review, a federal court must presume the correctness of a state court's factual findings unless the petitioner rebuts the presumption "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

Finally, even if a habeas petitioner satisfies § 2254(d)'s demanding standards, the petitioner is not automatically entitled to habeas relief.  *Milton v. Miller*, 744 F.3d 660, 670 (10th Cir. 2014).  Rather, satisfaction of these standards "effectively removes AEDPA's prohibition on the issuance of a writ" and "requires [the federal habeas court] to review de novo" the petitioner's claims, i.e., without deference to the state court's decision, to determine whether the petitioner is entitled to habeas relief.  *Id.* at 670-71.

### A.    Challenges to the validity of the guilty pleas (Grounds 1 and 3(A))

Petitioner alleges two separate but related constitutional challenges to the validity of his blind guilty pleas.  First, in Ground 1, Petitioner asserts a due-process claim, alleging his guilty pleas are neither knowing nor voluntary because his plea attorneys, Murphy and Patterson, erroneously

advised him (1) that he would be eligible for a one-year judicial review and (2) that he might receive a lesser sentence if he pleaded guilty. Dkt. 3 at 23-24. Second, in Ground 3(A), Petitioner asserts a Sixth Amendment claim, alleging his plea attorneys were constitutionally ineffective when they erroneously advised him he would be eligible for judicial review and that he might receive a lesser sentence. *Id.* at 30-34. He further alleges that, but for that erroneous advice, he would not have pleaded guilty and would have insisted on going to trial. *Id.* at 31-32.

The OCCA considered each claim separately, and rejected both on the merits. Dkt. 11-7, OCCA Op., 3-4, 7-9. As Respondent points out, the OCCA made findings relevant to both claims in addressing Petitioner's Sixth Amendment claim. *See* Dkt. 11 at 18 n.6. The OCCA found, and the record reflects, that Petitioner's plea attorneys "incorrectly" advised Petitioner he would be "eligible" for judicial review. Dkt. 11-7, OCCA Op., at 7-8. At the hearing on his motion to withdraw his pleas, Murphy and Patterson both testified they advised Petitioner he would be eligible for a one-year judicial review and that the possibility of a one-year review seemed "very important" and "key" to his decision to enter a blind plea. Dkt. 12-5, Tr. Mot. Hr'g (Jan. 6, 2012), at 12, 15-17, 25, 31-35, 41. Petitioner testified he understood he would be eligible for a judicial review and the possibility of obtaining a one-year judicial review was "a big part of" his decision to plead guilty. *Id.* at 51.

The OCCA also found, based on Petitioner's testimony, that his "decision to plead guilty did not rest entirely on the possibility of judicial review, but also was based on other considerations." Dkt. 11-7, OCCA Op., at 8-9.

### 1. Due-process claim (Ground 1)

As previously stated, the crux of Petitioner's due-process claim is that his guilty pleas were not entered knowingly and intelligently because plea counsel erroneously advised him (1) that he would be eligible for judicial review and (2) that he might get a lesser sentence by pleading guilty. Dkt. 3 at 23-24.[10] The OCCA rejected Petitioner's due-process claim. *See* Dkt. 11-7, OCCA Op., at 3-4. Citing *Estell v. State*, 776 P.2d 1380, 1383 (Okla. Crim. App. 1988), the OCCA stated that "[w]hen a defendant claims that his guilty plea was entered through inadvertence, ignorance, influence or without deliberation, he has the burden to show not only that the plea was entered as a result of one of these reasons, but also that there is a defense that should be presented to the jury." Dkt. 11-7 at 3. Citing *Brady v. United States*, 397 U.S. 742, 757 (1970), the OCCA further stated that a plea is not necessarily invalid "if the defendant did not correctly assess every relevant fact entering into his decision" or if the defendant "misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." Dkt. 11-7 at 3-4. Applying *Estell* and *Brady*, the OCCA reasoned,

> While [Petitioner] presents a colorable claim that his plea was entered from a misunderstanding of whether he would be eligible for judicial review of his sentence,

---

[10] As stated, Respondent contends that Petitioner failed to exhaust the second part of his Ground 1 claim by not "fairly present[ing] it to the OCCA. *See* Dkt. 11 at 2, 8 n.2; *Hawkins*, 291 F.3d at 668. The Court disagrees. In his certiorari appeal brief, Petitioner expressly argued that Patterson advised him, verbally and in writing, that if he pleaded guilty he would likely receive a lesser sentence. *See* Dkt. 11-3, Pet'r Cert. App. Brief, at 23-24. In support, Petitioner referenced a handwritten note that he received from Patterson indicating he would get a sentence of "probably 20" years. *Id.* at 24. In the district court proceedings, Petitioner attached that same handwritten note to his post-sentencing pro se motion to withdraw his pleas. *See* Dkt. 11-2, Post-Sent. Mot. to Withdraw Plea (June 11, 2012), at 7. Thus, contrary to Respondent's contention, Petitioner exhausted the second part of his Ground 1 claim. However, as discussed below, the Court finds that Petitioner is not entitled to habeas relief on Ground 1.

9

he neither alleged in the district court, nor does he allege here, that he had any defense to present to the jury. He therefore fails to demonstrate an entitlement to withdraw his plea. The trial court judge did not abuse its discretion by denying [Petitioner's] motion to withdraw his plea.

*Id.* at 4.

Petitioner contends, under § 2254(d)(1), that the OCCA's decision is either contrary to, or an unreasonable application of, clearly established federal law. Dkt. 3 at 22, 24; Dkt. 15 at 10-11. He argues the OCCA required him to show, under *Estell*, that he had a defense to present to the jury before he would be entitled to withdraw his plea. Dkt. 3 at 22-24. In doing so, Petitioner argues, the OCCA imposed a higher burden than the one stated in *Boykin v. Alabama*, 395 U.S. 238 (1969), and *Brady* which requires a showing that the plea was not knowing and voluntary but does not require a showing that the defendant had a viable defense. *Id.*; *see also* Dkt. 15 at 8-10. Thus, Petitioner urges this Court to review his Ground 1 claim de novo and conclude that his guilty pleas were entered in violation of his due process rights. Dkt. 3 at 24; Dkt. 15 at 10-12.

Respondent contends the OCCA's decision is neither contrary to nor an unreasonable application of *Brady*. Dkt. 11 at 10. Respondent argues, in part, the OCCA's "requirement that Petitioner show there is a defense to be presented to the jury, is merely a factual circumstance used by the [OCCA] to determine the voluntariness of the plea." *Id.* at 10. Alternatively, Respondent argues that even if this Court reviews Petitioner's claim de novo, he is not entitled to habeas relief because the record demonstrates his pleas were knowing and voluntary. *Id.* at 13-23.

As Petitioner argues, *Brady* provides that courts should consider several factors in determining whether a guilty plea is knowing and voluntary. Dkt. 3 at 22-23; *see Brady*, 397 U.S. at 749 (identifying relevant factors as including the potential of a higher sentence after trial, the

strength of the prosecution's evidence, and the "chances for acquittal"). But even if Petitioner correctly reads *Estell* as listing an additional factor for consideration not explicitly recognized in *Brady*, the actual rule from *Estell*, i.e., that courts should consider various factors in determining the validity of a plea, is consistent with *Brady*. Thus, the OCCA's decision cannot be "contrary to" clearly established federal law. *See Williams*, 529 U.S. at 405 (explaining that term "contrary" means "diametrically different," "opposite in character or nature," or "mutually opposed"); *Smith*, 824 F.3d at 1241 (explaining that rule applied by state court must "contradict[]" the Supreme Court's governing legal principle).

That said, the Court agrees with Petitioner that the OCCA's stated rationale for denying relief on Petitioner's Ground 1 claim focuses on only one factor drawn from *Estell*: Petitioner's failure to allege that he had a defense to present to the jury. Dkt. 11-7, OCCA Op., at 4. This at least suggests that the OCCA may have incorrectly applied the rule from *Brady*. Nonetheless, § 2254(d)(1) requires a petitioner to show that the state court's application of the rule was "unreasonable," not "incorrect." *See Williams*, 529 U.S. at 410 (stating that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law"). "As a result, 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly'; 'that application must also be unreasonable.'" *Newmiller v. Raemisch*, 877 F.3d 1178, 1195 (10th Cir. 2017) (quoting *Williams*, 529 U.S. at 411).

Under the facts of this case, the OCCA's rejection of the first part of Petitioner's Ground 1 claim is consistent with clearly established federal law. A federal court reviewing a guilty plea taken in state court may set aside a guilty plea only if it fails to satisfy due process. To satisfy due process,

a guilty plea must be knowing, intelligent, and voluntary. *Boykin*, 395 U.S. at 242-44; *see also Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (noting that a plea is valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant" (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970))). Generally, a guilty plea satisfies due process if the defendant understands the direct consequences of his plea. *See United States v. Hurlich*, 293 F.3d 1223, 1230 (10th Cir. 2002) (The defendant need not understand every collateral consequence of the plea, but need only understand its direct consequences."). At a minimum, the defendant must understand the nature of the charges against him, the possible penalties, and the fact that he is waiving several constitutional rights by entering a plea. *Brady*, 397 U.S. at 756-57; *Boykin*, 395 U.S. at 242-44. Here, regardless of whether Petitioner's plea rests on inaccurate advice from plea counsel that he would be eligible for judicial review, his inability to seek post-conviction judicial review is not a direct consequence of his plea. *See, e.g.*, *Hill*, 474 U.S. at 56 (stating the Supreme Court has "never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary"); *United States v. Carillo-Estrada*, 564 F. App'x 385, 387-88 (10th Cir. 2014) (unpublished)[11] (rejecting habeas petitioner's due process argument that "he had a right to know of the possibility of seeking asylum for himself and his family before entering his guilty plea" and explaining that "the possibility of seeking asylum is not a *consequence* of conviction—either direct or indirect"); *Cunningham v. Diesslin*, 92 F.3d 1054, 1061 (10th Cir. 1996) ("An attorney's erroneous . . .

---

[11]     The Court cites this decision, and other unpublished decisions herein, as persuasive authority. *See* FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

prediction of parole does not render a plea unknowingly made."). Thus, counsel's erroneous advice on this matter does not render Petitioner's "plea unknowingly made." *Cunningham*, 92 F.3d at 1061.

The second part of Petitioner's Ground 1 claim, his argument that plea counsel misled him as to the sentence he might receive, is similarly unavailing. Significantly, Patterson testified he advised Petitioner that with a blind plea the trial judge would have "sole discretion" to determine Petitioner's sentence, and that Petitioner appeared to understand that point. Dkt. 12-5, Tr. Mot. Hr'g (Jan. 6, 2012), at 35, 40. And Petitioner testified he understood that with a blind plea the trial judge could impose any sentence within the permissible sentencing range. *Id.* at 54-55. Moreover, at the plea hearing the trial court expressly advised Petitioner that by entering a blind plea he could expect the court to impose a sentence within the range of 20 years to life. Dkt. 12-4, Tr. Plea Hr'g (Nov. 8, 2011), at 10. Petitioner stated he understood the court could impose any sentence in that range. *Id.* Based on these facts, the trial court found that Petitioner understood he was not promised any particular sentence within the range of 20 years to life in exchange for his guilty pleas. *Id.* at 69-73. Significantly, the handwritten note Petitioner asserts he received from Patterson does not undermine the trial court's finding on this point. That note indicates that Patterson advised Petitioner as follows: "plea - guilty judge decides (probably 20)." Dkt. 11-2 at 7. Thus, even reviewing the record de novo, there is no support for Petitioner's argument that his plea is void based on plea counsel's "bad guess" regarding the sentence that would be imposed. *See Brady*, 397 U.S. at 757 ("A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended . . . the likely penalties attached to alternative courses of action."); *Tovar Mendoza v. Hatch*, 620 F.3d 1261, 1270-71 (10th Cir. 2010) (discussing distinction between "a promise by counsel of a specific sentence" and "a bad guess regarding parole

eligibility"); *Cunningham*, 92 F.3d at 1061 ("An attorney's erroneous sentence estimate . . . does not render a plea unknowingly made.").

Moreover, there is ample support in the record for the OCCA's findings that (1) the possibility of judicial review was not the singular reason Petitioner decided to forgo trial and (2) his guilty pleas were both knowing and voluntary. Dkt. 11-7, OCCA Op., at 7-9. First, while Petitioner testified at the plea withdrawal hearing that the possibility of judicial review was "a big part" of his decision to enter blind guilty pleas, he also testified he wanted to "show[] responsibility" by pleading guilty. Dkt. 12-5, Tr. Mot. Hr'g (Jan. 6, 2012), at 50-51. Second, he testified that plea counsel advised him that his chances of acquittal "didn't look good," and that he was not interested in a negotiated plea agreement with the State because the prosecutor recommended a 35-year sentence. *Id.* at 47. Third, as discussed, Petitioner testified he understood that by entering a blind plea the trial court could impose any sentence within the permissible range of punishment. *Id.* at 54-55.

Finally, though they are not conclusive on the question of whether his plea satisfies due process, Petitioner's in-court statements made during the plea hearing as to the knowing and voluntary nature of his pleas are accorded a strong presumption of reliability. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). During the plea hearing, Petitioner testified under oath that he was thinking clearly, he was "in full possession of his mental faculties," and he was not taking any medications or other substances that would affect his thinking. Dkt. 12-4, Tr. Plea Hr'g (Nov. 8, 2011), at 4-5. He also testified that he understood the nature and consequences of the plea proceeding, he understood the nature of the charges against him, he understood the trial rights he was giving up by entering guilty pleas, and he had not been promised anything in exchange for his guilty pleas. *Id.* at 4, 6-9. Finally, he testified he understood that the trial court would impose a "sentence

somewhere within th[e] range of 20 to life." *Id.* at 10. Further, at the plea withdrawal hearing, both plea attorneys testified Petitioner appeared competent during the hearing and appeared to understand the plea proceedings. Dkt. 12-5, Tr. Mot. Hr'g (Jan. 6, 2012), at 22-23, 42-43.

Based on the foregoing, the Court finds and concludes that the OCCA's rejection of Petitioner's due-process claim was neither contrary to nor an unreasonable application of federal law. Alternatively, the Court would reach the same conclusion even without applying AEDPA deference. Thus, the Court denies habeas relief on Ground 1.

## 2.    Ineffective assistance of plea counsel (Ground 3(A))

The OCCA also rejected Petitioner's Sixth Amendment claim. Dkt. 11-7, OCCA Op., at 7-9. As just discussed, the OCCA found that Petitioner's plea attorneys provided erroneous advice regarding Petitioner's eligibility for judicial review, and that Petitioner's "decision to plead guilty did not rest entirely on the possibility of judicial review, but also was based on other considerations." *Id.* at 9. Based on these findings, the OCCA reasoned that "it [was] not possible to conclude that but for plea counsel's misadvice [Petitioner] would have not pled guilty and would have insisted on going to trial." *Id.* Thus, the OCCA concluded, Petitioner failed to show prejudice. *Id.*

Petitioner contends the OCCA's decision on this claim is not entitled to AEDPA deference because it is contrary to clearly established federal law. He specifically argues that the decision is contrary to *Strickland v. Washington*, 466 U.S. 668, 694 (1984), because "the constitutional inquiry is whether a *reasonable probability* exists that the outcome of the proceeding would have been different." Dkt. 3 at 32. And, he argues, rather than applying *Strickland*'s reasonable-probability standard, the OCCA imposed an "outcome determinative" standard and required him to establish prejudice by showing "that but for counsel's misadvice he would not have entered the plea." *Id.*

15

Respondent contends the OCCA correctly applied *Strickland* and § 2254(d) therefore bars habeas relief on Petitioner's ineffective-assistance-of-plea-counsel claim. Dkt. 11 at 34-36.

The Court agrees with Respondent that the OCCA correctly identified the legal principle governing Petitioner's Sixth Amendment claim. In *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the Supreme Court held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." As relevant here, the *Hill* Court explained that to demonstrate prejudice in the context of a guilty plea, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Petitioner appears to take issue with the OCCA's failure to use the phrase "reasonable probability" in applying the *Strickland/Hill* prejudice standard. *See* Dkt. 3 at 32-33. Specifically, Petitioner argues that the OCCA required him to show "he would not have entered the plea" rather than showing a "reasonable probability" that he would not have entered the plea. *Id.* However, as Respondent argues, the Tenth Circuit rejected a nearly identical argument in *Frost v. Pryor*, 749 F.3d 1212 (10th Cir. 2014). *See* Dkt. 11 at 33-34. In *Frost*, the habeas petitioner raised, *inter alia*, a Sixth Amendment ineffective-assistance of counsel claim. 749 F.3d at 1215. In addressing that claim, the state court cited the *Strickland* standard in one part of its opinion, using the reasonable-probability language, but later stated, "[g]iven the overwhelming evidence of [Mr.] Frost's guilt presented at trial, we are not persuaded that the jury *would have reached a different result* had it been presented with the information to which [Mr.] Frost refers." *Id.* at 1226 (alterations and emphasis in original) (quoting *State v. Frost*, No. 98,433, 212 P.3d 263, 2009 WL 2371007, at *5 (Kan. Ct. App. July 31, 2009) (unpublished table decision)). The Tenth Circuit rejected the petitioner's

argument that the state court employed an "outcome determinative" standard. *Frost*, 749 F.3d at 1226-27. In doing so, the Tenth Circuit relied on the Supreme Court's observation that "similar use of the words 'would not have' does not necessarily 'imply any particular standard of probability.'" *Id.* at 1227 (quoting *Holland v. Jackson*, 542 U.S. 649, 654 (2004)). In light of *Frost*, the Court finds that the OCCA's prejudice determination—i.e., that "it [was] not possible to conclude that but for plea counsel's misadvice [Petitioner] would have not pled guilty and would have insisted on going to trial," Dkt. 11-7 at 9, was not contrary to clearly established federal law.

Nor was the OCCA's decision on the Sixth Amendment claim based on an unreasonable application of the *Strickland/Hill* standard. Standing alone, this standard is "highly deferential." *Strickland*, 466 U.S. at 689. Coupled with § 2254(d)(1), this Court's review of whether the OCCA unreasonably applied *Strickland* is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Viewing the OCCA's decision with double deference, the Court finds that Petitioner is not entitled to habeas relief. Petitioner alleges that, but for counsel's erroneous advice regarding his eligibility for judicial review, he would have insisted on going to trial. Dkt. 3 at 31-33. The OCCA found otherwise. Citing Petitioner's own testimony, the OCCA found that Petitioner's "decision to plead guilty did not rest entirely on the possibility of judicial review, but also was based on other considerations." Dkt. 11-7, OCCA Op., at 9. This finding is entitled to the presumption of correctness, *see* § 2254(e)(1), and, in any event, is fully supported by the record.

As discussed, Petitioner testified at the plea withdrawal hearing that the possibility of judicial review was "a big part" of his decision to enter blind guilty pleas. But he also testified he wanted to "show[] responsibility" by pleading guilty. Dkt. 12-5, Tr. Mot. Hr'g (Jan. 6, 2012), at 50-51. Petitioner also testified that plea counsel advised him that his chances of acquittal "didn't look

good," and that he was not interested in a negotiated plea agreement with the State because the prosecutor recommended a 35-year sentence. *Id.* at 47. And, Petitioner testified he understood that by entering a blind plea the trial court could impose any sentence within the permissible range of punishment. *Id.* at 54-55. He specifically testified that he understood he was taking a "[c]alculated risk" by entering a blind guilty plea, and that the possibility of a judicial review "gave [him] hope" rather than a promise of "lesser punishment." *Id.* at 55, 63. On these facts, Petitioner has not demonstrated that the OCCA's decision denying relief on his Sixth Amendment claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Accordingly, the Court denies habeas relief on Ground 3(A).

### B.      Fair and impartial judge (Ground 2)

In Ground 2, Petitioner claims he was deprived of his constitutional right to an impartial judge during his plea withdrawal hearings and sentencing hearing. Dkt. 3 at 24-29. He alleges the trial judge's personal and professional relationships with the prosecutor and Petitioner's plea attorney, Murphy, impaired the judge's ability to conduct his plea withdrawal hearings in an impartial manner. *Id.* at 25-29; Dkt. 15 at 13-14. He further alleges that the trial judge's refusal to appoint conflict-free counsel for sentencing and the judge's decision to impose a life sentence demonstrate the judge's bias. Dkt. 3 at 27.

The OCCA rejected this claim on the merits. Dkt. 11-7, OCCA Op., at 4-7.[12] In rejecting this claim, the OCCA cited state law for the proposition that in "making a claim of bias, a defendant must demonstrate some prejudice which denied him due process or fundamental fairness." *Id.* at 6-7 (quoting *Carter v. State*, 879 P.2d 1234, 1242 (Okla. Crim. App. 1994)). The OCCA reasoned (1) Petitioner failed to "show[] that the trial judge actually harbored any prejudice against him," or to "proffer any evidence or point to anything in the record showing how the judge's alleged prejudice materially affected his rights," *Id.* at 6. The OCCA further reasoned that "a mere suggestion of bias based on a claim that the trial judge ruled unfavorably on some unspecified motions, is insufficient to rebut the presumption of judicial impartiality and thereby demonstrate prejudice." *Id.* at 7.

Petitioner contends the OCCA's decision is not entitled to AEDPA deference because it is either contrary to or an unreasonable application of federal law, "not to mention being an unreasonable determination of the facts." Dkt. 3 at 27 (citing § 2254(d)(1) and (d)(2)). First, Petitioner appears to argue the OCCA applied the wrong legal principle because, under federal law, a petitioner can prevail on a judicial-bias claim by showing "actual bias or the appearance of bias." Dkt. 3 at 28. Second, he argues the OCCA's decision is based on an unreasonable factual determination in light of the record that, according to Petitioner, demonstrates that the trial judge's relationships resulted in adverse rulings. *Id.* at 26-28; Dkt. 15 at 13-14.

Respondent contends Petitioner cannot overcome § 2254(d)'s deferential standards and that he is not entitled to habeas relief on this claim. Dkt. 11 at 23-29.

---

[12] As Respondent points out, in his certiorari appeal, Petitioner also challenged the trial judge's refusal to recuse from the case. *See* Dkt. 11 at 23 n.7. The OCCA found Petitioner waived his challenge to the recusal decision by failing to timely file his writ of mandamus. Dkt. 11-7, OCCA Op., at 5. Nevertheless, the OCCA found Petitioner did not waive his related judicial-bias claim. *Id.*

The Court disagrees with Respondent's first point, but agrees that Petitioner is not entitled to habeas relief on his judicial-bias claim. "Due process guarantees 'an absence of actual bias' on the part of a judge." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)).[13] Under clearly established federal law, the question is "not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, 'the average judge in his position is "likely" to be neutral, or whether there is an unconstitutional "potential for bias."'" *Id.* (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009)). As Petitioner argues, under this objective standard, a petitioner can prevail on a judicial-bias claim by showing either "actual bias" or the "appearance of bias." *Fero v. Kirby*, 39 F.3d 1462, 1478 (10th Cir. 1994). Nonetheless, "[d]isqualification of a judge for actual bias or prejudice is a serious matter and should only be required when the evidence is compelling." *Id.* And, "[w]ithout an incentive for actual bias . . . disqualification is not required regardless of appearances." *Id.*

Here, contrary to the standard set forth in *Caperton*, the OCCA's decision appears to rest on its determination that Petitioner failed to demonstrate actual bias. *See* Dkt. 11-7, OCCA Op., at 4-7. Assuming without deciding that the OCCA's decision is contrary to *Caperton* and therefore not entitled to AEDPA deference, the Court nevertheless finds that Petitioner is not entitled to habeas relief. As Respondent points out, and the record reflects, the trial judge informed Petitioner at his February 2011 arraignment hearing about the judge's relationships with the prosecutor and Petitioner's plea attorney, Murphy. Dkt. 12-1, Tr. Arr. Hr'g (Feb. 11, 2011), at 4-7. The trial judge

---

[13]     The Court acknowledges that the OCCA did not have the benefit of the Supreme Court's decision in *Williams* when the OCCA issued its decision affirming Petitioner's convictions in 2013. The Court finds *Williams* helpful, however, to the extent it explains the Supreme Court precedent as it stood in 2013.

informed Petitioner that the prosecutor and Murphy were his "professional acquaintances" as they had all previously worked in the same office, that they were also "friends beyond the workplace," and that both attorneys had "helped in [the judge's] campaign efforts." *Id.* at 5. The trial judge then stated he believed he could be "fair and impartial" but offered to recuse if Petitioner was "not comfortable" with the judge presiding over his case. *Id.* at 6. Under oath, Petitioner testified he had discussed the matter with his attorneys, he had independently thought about the matter, and that he did not want the judge to recuse. *Id.* at 6.

Immediately following the January 2012 motion hearing wherein the trial judge denied Petitioner's first motion to withdraw his pleas, Petitioner sought the judge's recusal alleging the judge's relationship with his attorney influenced his ruling on the motion. Dkt. 12-5, Tr. Mot. Hr'g (Jan. 6, 2012), at 73-79. The court held a brief hearing, declined to recuse, and advised Petitioner he could pursue recusal by filing a written motion at least 10 days before sentencing. *Id.* at 73-74, 79-80. The court then asked Petitioner whether he wanted to proceed to sentencing with his plea attorneys, have a new attorney appointed, or retain an attorney. *Id.* at 75-78. Petitioner asked for time to retain an attorney, and the court set the matter for sentencing. *Id.* at 79-80.

One month later, Petitioner filed a pro se motion renewing his recusal request. Dkt. 11-9, Mot. to Disqualify. The trial court held a brief hearing on the motion on February 21, 2012. Dkt. 12-6, Tr. Mot. Hr'g (Feb. 21, 2012). Patrick Adams represented Petitioner at the hearing and adopted Petitioner's pro se motion as his own. *Id.* at 2. The court denied the motion. *Id.* at 3-4. Petitioner sought rehearing and, on March 14, 2012, the chief judge held a hearing on Petitioner's recusal motion. Dkt. 12-7, Tr. Mot. Hr'g (Mar. 14, 2012), at 1. After hearing extensive testimony from Petitioner, the chief judge denied the motion. *See id.* at 4-42, 55-57. Significantly, the chief

judge found no "evidence of bias to support an allegation of improper conflict of interest," and "no evidence to justify a reversal of [the trial judge's] decision" not to recuse. *Id.* at 56. In finding that Petitioner was afforded "complete due process" on the recusal issue, the chief judge emphasized (1) the trial judge's actions in informing Petitioner, during his arraignment, of his relationships with the attorneys and in offering to recuse, and (2) Petitioner's "sworn testimony" that Petitioner was comfortable proceeding with the trial judge despite that information. *Id.* at 55-56.

On this record, the Court concludes that Petitioner has not shown either actual bias or "that the probability of actual bias on the part of the [trial] judge . . . is too high to be constitutionally tolerable." *See Caperton*, 556 U.S. at 877 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). First, to the extent Petitioner relies on the trial judge's adverse rulings as evidence of bias, such rulings generally are insufficient in and of themselves to demonstrate bias. *See Liteky v. United States*, 510 U.S. 540, 555 (noting that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"). Second, to the extent Petitioner relies on the trial judge's pre-existing relationships plus the adverse rulings, the Court finds that reliance misplaced. As the chief judge reasoned in denying Petitioner's motion for recusal, Petitioner was "comfortable" moving forward with the knowledge of the trial judge's relationships with his attorneys until the trial judge ruled against him. *See* Dkt. 12-1, Tr. Mot. Hr'g (Feb. 11, 2011), at 6; Dkt. 12-5, Tr. Mot. Hr'g (Jan. 6, 2012), at 73-79. For these reasons, the Court denies habeas relief on Ground 2.

## C.     Cumulative error (Ground 6)

Finally, in Ground 6, Petitioner contends he is entitled to habeas relief because "the aggregate impact of the errors in this case" deprived him of his constitutional rights. Dkt. 3 at 47-49. The

OCCA rejected this claim on the merits, finding that there were "no error[s] to accumulate." Dkt. 11-7 at 14.

"[I]n the federal habeas context, a cumulative-error analysis aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Alverson v. Workman*, 595 F.3d 1142, 1162 (10th Cir. 2010) (internal quotation marks and brackets omitted). But a cumulative-error analysis is warranted "only if there are at least two errors." *Lott v. Trammell*, 705 F.3d 1167, 1223 (10th Cir. 2013) (quoting *Hooks*, 689 F.3d at 1194-95). Like the OCCA, the Court finds there are no harmless constitutional errors to accumulate. Thus, the Court denies habeas relief on Ground 6.

## II. Procedurally barred claims

Petitioner also seeks habeas relief on several claims the OCCA declined to review on procedural grounds. Generally, "a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). A state procedural rule "is independent if it is separate and distinct from federal law," and "is adequate if it is 'strictly or regularly followed' and applied 'evenhandedly to all similar claims.'" *Duvall v. Reynolds*, 139 F.3d 768, 796-97 (10th Cir. 1998) (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982)).

Because procedural default is an affirmative defense, the state bears the burden to assert it. *Hooks v. Ward*, 184 F.3d 1206, 1216 (10th Cir. 1999). And, when a petitioner argues that a state procedural rule is inadequate, the state "bears the burden of proving the adequacy of a state

procedural bar." *Id.* at 1217. However, even if the State makes this showing, a federal court may review a procedurally defaulted claim if "the prisoner can [1] demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or [2] demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

## A. *Cox v. State*

In Ground 3(B), Petitioner alleges he received ineffective assistance from recusal counsel, Patrick Adams, when Adams failed to timely file the writ of mandamus to challenge the chief judge's denial of his recusal motion. Dkt. 3 at 34-36.

The OCCA declined to review this claim. Dkt. 11-7, OCCA Op., at 9-10. Relying on *Cox v. State*, 152 P.3d 244, 247 (Okla. Crim. App. 2006), *overruled on other grounds by State v. Vincent*, 371 P.3d 1127 (Okla. Crim. App. 2016), the OCCA concluded that the scope of review on certiorari appeal is "limited to two inquiries: (1) whether the guilty plea was made knowingly and voluntarily; and (2) whether the district court accepting the guilty plea had jurisdiction to accept the plea." Dkt. 11-7 at 9. The OCCA reasoned that Petitioner's ineffective-assistance-of-recusal-counsel claim "is a matter that has nothing to do with whether his plea was made knowingly and voluntarily, or whether the trial court had jurisdiction to accept the plea." *Id.* at 9-10. Thus, the OCCA rejected Petitioner's claim without reaching the merits. *Id.*

Petitioner contends that the rule drawn from the OCCA's decision in *Cox v. State*, which limits the scope of review on certiorari appeal, is inadequate to preclude habeas review because the OCCA does not apply the rule "evenhandedly." Dkt. 3 at 35; Dkt. 15 at 18-19. Petitioner alleges "the OCCA often considers claims other than those enumerated in *Cox* during certiorari appeals."

Dkt. 15 at 18.  Thus, he argues, this Court should review his claim de novo and grant habeas relief.

Dkt. 3 at 35-36.  Respondent contends the *Cox* rule is adequate because it is "applied evenhandedly

in the vast majority of cases."  Dkt. 11 at 39-40 (quoting *English v. Cody*, 146 F.3d 1257, 1259 (10th

Cir. 1998)).

Whether a state procedural bar is "adequate" to bar federal habeas review "is a matter of

federal law." *Johnson v. Lee*, 136 S. Ct. 1802, 1805 (2016).  "To qualify as an 'adequate' procedural

ground, a state rule must be 'firmly established and regularly followed.'" *Walker v. Martin*, 562 U.S.

307, 316 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 60 (2009)).  And "a discretionary [state

procedural] rule can be 'firmly established' and 'regularly followed'—even if the appropriate

exercise of discretion may permit consideration of a federal claim in some cases but not others."

*Kindler*, 558 U.S. at 60.  Thus, in determining whether a state procedural rule is "adequate" the

appropriate question is whether the state court's "application of the particular procedural default rule

[at issue] to all similar claims has been evenhanded in the vast majority of cases."  *Thacker v.

Workman*, 678 F.3d 820, 835 (10th Cir. 2012) (alteration in original) (quoting *Maes v. Thomas*, 46

F.3d 979, 986 (10th Cir. 1995)).

Having considered the cases cited by both parties, the Court agrees with Respondent that the

*Cox* rule is adequate in that the OCCA applies it evenhandedly in the majority of cases.  *See id.*

While Petitioner cites some cases supporting that the OCCA occasionally declines to apply the rule

and considers issues outside the scope of review defined by *Cox*, the OCCA's occasional deviation

from the rule does not render the rule inadequate under federal law.  *Kindler*, 558 U.S. at 60; *see also

Lee*, 136 S. Ct. at 1805 (noting that when a state procedural rule is "well-established and ubiquitous

. . . it takes more than a few outliers to show inadequacy").

Accordingly, Petitioner's Ground 3(B) claim is procedurally barred unless Petitioner can demonstrate cause and prejudice or that a miscarriage of justice will occur if the Court does not review the claim. *Coleman*, 501 U.S. at 750. Petitioner does not assert, either in his supporting brief or in his reply, that he can overcome the procedural bar by demonstrating cause and prejudice. *See* Dkts. 3, 15. Nor does he invoke the miscarriage-of-justice exception by alleging that he is factually innocent. *See Magar v. Parker*, 490 F.3d 816, 820 (10th Cir. 2007) (noting that the miscarriage-of-justice exception is "implicated only in 'extraordinary case[s] where a constitutional violation has probably resulted in the conviction of one who is actually innocent'" (quoting *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir. 1999))). Instead, he simply challenges the adequacy of the *Cox* rule and argues because it is inadequate this Court may review his ineffective-assistance-of-recusal-counsel claim de novo. Dkt. 3 at 35; Dkt. 15 at 18-19. Because the Court concludes that the *Cox* rule is adequate to bar habeas review, the Court denies relief on Ground 3(B).

### B. Rule 4.2(B)

In Ground 3(C), Petitioner alleges sentencing counsel provided ineffective assistance by failing to present mitigating evidence. Dkt. 3 at 36-40. In Ground 3(D), Petitioner alleges all of the attorneys who represented him through plea proceedings, recusal proceedings, and sentencing were ineffective for failing to litigate his competency. *Id.* at 40-42. In Ground 4, Petitioner asserts a double-jeopardy claim, alleging his convictions on Count 1 for manslaughter based on the misdemeanor offense of driving with a revoked license and on Count 2 for the misdemeanor offense of driving with a revoked license violate the Double Jeopardy Clause's prohibition against multiple punishments. *Id.* at 42-45. Finally, in Ground 5, Petitioner alleges the trial court deprived him of

his right to conflict-free sentencing counsel by denying Adams motion to withdraw as Petitioner's attorney. *Id.* at 45-47.

The OCCA declined to review these claims. Dkt. 11-7, OCCA Op., at 10-13. It found that Petitioner failed to preserve these claims for review on certiorari appeal by failing to assert them in any of his motions to withdraw his pleas. *Id.*; *see* Rule 4.2(B), *Rules of the Oklahoma Court of Criminal Appeals*, tit. 22, Ch. 18, App. (2018) ("No matter may be raised in the petition for a writ of certiorari unless the same has been raised in the application to withdraw the plea . . . ."); *Walker v. State*, 953 P.2d 354, 355 (Okla. Crim. App. 1998) (noting that under Rule 4.2(B) an appellant waives an issue by failing to raise it in his motion to withdraw a guilty plea).

Petitioner attempts to avoid his procedural default of these claims by arguing that Rule 4.2(B) is inadequate because it "is not evenhandedly applied in the vast majority of cases." Dkt. 3 at 37-38; *see also* Dkt. 15 at 19-21 (citing cases in which the OCCA has declined to apply Rule 4.2(B)). Respondent contends the rule is both independent and adequate. Dkt. 11 at 42-45. With respect to adequacy, Respondent acknowledges that the OCCA occasionally reviews claims on certiorari appeal that were not first raised in plea withdrawal motions. *Id.* But Respondent argues the OCCA's deviation from the rule in some cases does not render the rule inadequate. *Id.* at 43; *see Cannon v. Gibson*, 259 F.3d 1253, 1268 (10th Cir. 2001) ("[T]he fact that a state court has overlooked the procedural bar as an 'occasional act of grace' is insufficient to conclude that the procedural bar is inadequate.").

Again, the Court has considered the cases cited by both parties. And, while Petitioner is correct that the OCCA does not strictly apply Rule 4.2(B), that is not the test. Rather, the test is whether the OCCA applies the rule evenhandedly to similar claims in the majority of cases.

*Thacker*, 678 F.3d at 835. The Court agrees with Respondent that the OCCA does so and that Rule 4.2(B) is therefore adequate.[14] Petitioner's claims are therefore procedurally barred unless Petitioner can demonstrate cause and prejudice or that a miscarriage of justice will occur if the Court does not review them. *Coleman*, 501 U.S. at 750. Petitioner does not assert, either in his supporting brief or in his reply, that he can overcome the procedural bar by demonstrating cause and prejudice. *See* Dkts. 3, 15. Nor does he invoke the miscarriage-of-justice exception by alleging that he is factually innocent. *See Magar*, 490 F.3d at 820. Instead, he simply challenges the adequacy of Rule 4.2(B) and argues that because it is inadequate this Court may review his claims de novo. Dkt. 3 at 38, 41, 43, 45; Dkt. 15 at 20-21. Because the Court concludes that Rule 4.2(B) is adequate to bar habeas review, the Court denies relief on Ground 3(C), Ground 3(D), Ground 4, and Ground 5.

### CONCLUSION

After careful consideration of the parties' briefs, the OCCA's decision, and the state-court record, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Therefore, the Court denies his petition for writ of habeas corpus.

---

[14]     The Court is particularly persuaded by Respondent's citation to *Whitaker v. State*, 341 P.3d 87 (Okla. Crim. App. 2015). There, the OCCA explained the purpose of Rule 4.2(B). First, the OCCA stated, "[i]t is incumbent upon a defendant who wishes to challenge his sentence in a *certiorari* appeal to make a sufficient record of [the] claim at the district court hearing on his motion to withdraw plea." *Whitaker*, 341 P.3d at 90. Next, the OCCA stated, "[i]f a matter is not presented to the trial court, there is nothing for [the OCCA] to review." *Id.* Rules, like Rule 4.2(B), which require litigants to assert issues in a lower court to preserve them for appellate review are common in most courts, state and federal. And the Supreme Court has cautioned that "[f]ederal habeas courts must not lightly 'disregard state procedural rules that are substantially similar to those to which we give full force in our own courts.'" *Lee*, 136 S. Ct. at 1805-06 (quoting *Kindler*, 558 U.S. at 62). That caution further bolsters the Court's conclusion that Rule 4.2(B) is adequate to bar federal habeas review.

## Certificate of Appealability

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A district court may issue a certificate of appealability (COA) "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court dismisses a habeas petition by rejecting the merits of petitioner's constitutional claims, the petitioner must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, if the district court dismisses the habeas petition on procedural grounds, the petitioner must make this showing by demonstrating both "[1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

The Court rejected Grounds 1, 2, 3(A), and 6 on the merits and denies a COA on those claims because reasonable jurists would not find the Court's assessment of those claims debatable or wrong. The Court rejected Grounds 3(B), 3(C), 3(D), 4 and 5 on procedural grounds and denies a COA on those claims because the Court finds that reasonable jurists would not debate the correctness of the Court's determination that those claims were procedurally barred on independent and adequate state law grounds. For these reasons, the Court denies a COA as to all claims.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.     The Clerk of Court shall note the substitution of Jimmy Martin, Warden, in place of Tracy McCollum, Warden, as party respondent.

2.    The petition for a writ of habeas corpus (Dkt. 2) is **denied**.

3.    A certificate of appealability is **denied**.

4.    A separate Judgment shall be entered in this case.

    **DATED** this 19th day of March 2018.

GREGORY K. FRIZZELL, CHIEF JUDGE